# IN THE UNITED STATE DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAUL STARR, an individual | ) |
| Plaintiff, | ) Case No.: 14-CV-621-JED-TLW |
| v. | ) |
| QUIKTRIP CORPORATION, a domestic for-profit corporation | ) |
| Defendant. | ) **ATTORNEY LIEN CLAIMED** |
| | ) **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW the Plaintiff Paul Starr ("Starr"), by and through his attorneys of record Oxford Lehr, PLLC, and for his complaint states as follows:

### JURISDICTION AND VENUE

1. At all times relevant to this proceeding, Starr was a resident of Rogers County, Oklahoma.

2. Defendant QuikTrip Corporation ("QuikTrip") is a domestic, for-profit corporation with its primary place of business in Tulsa, Oklahoma.

3. The actions giving rise to this proceeding took place in Catoosa, Wagoner County, Oklahoma.

4. This case arises under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C.A. § 4311, et seq.

5. Jurisdiction and venue are properly with this Court.

## FACTUAL SUMMARY

6. Starr began his employment with Graphics Systems, Inc. in approximately 1995, at their facility in Catoosa. He started as a printer and later became a shipping and receiving clerk.

7. Upon information and belief, in approximately the year 2000, QuikTrip acquired Graphics Systems including the employees of the facility in Catoosa, which included Starr.

8. In 2006, while still employed by QuikTrip, Starr joined the Oklahoma National Guard as an E4-Specialist, while remaining employed by QuikTrip.

9. Starr was deployed to Iraq in 2007, and returned to the United States in approximately November 2008, and resumed his employment with Quiktrip. Bob Nichols, Starr's supervisor, made his displeasure known to Starr by suggesting Starr should terminate his employment with QuikTrip and go back into the military full time. He said this to Starr on multiple occasions.

10. Further, Starr noticed other less qualified people had been promoted around him while he was deployed to Iraq.

11. As part of his ongoing commitment to the Oklahoma National Guard, Starr began training to be a sniper in 2010, and attended sniper school that year. He graduated from sniper school in February 2011 and had ten days before he had to report back to mobilize for deployment to Afghanistan. Bob Nichols refused to allow Starr to work any shifts during this period and told him he should just go home. He was not paid during this period.

12. During his time in Afghanistan, Starr served in the infantry, first as a fire team leader/infantry sniper and later as the platoon sergeant.

13. Starr returned from Afghanistan and went back to work for QuikTrip in July 2012. On his first day back at work, Bob Nichols approached him while in front of numerous other work

colleagues and asked him if he "got all of his killing done," and wanted to know if Starr was ready to go back to work.

14. Soon after returning from his deployment, Starr began suffering from severe Post Traumatic Stress Disorder, unable to sleep due to nightmares and anxiety, anger, jumpiness from loud noises, he was unable to leave his house to get to work on time.

15. Starr spoke with QuikTrip human resources employee Crag Hall about his PTSD and the problems he was having getting to work after his deployment to Afghanistan. Hall told Starr that as long as Starr called into QuickTrip before the next day, he would not lose his job if he missed work.

16. Several weeks after his conversation with Hall, Starr missed a complete day of work, due in part to his insomnia. When he awoke to find himself many hours late, he asked his wife to call in and to speak to his supervisor to let him know what happened. His wife called Starr's place of employment and notified QuikTrip that Starr would not be in that day.

17. When Starr returned to work the next day, one of his supervisors inquired about his absence. Starr explained why he was absent the day before, and pointed out that his wife called in to notify the company. Shortly thereafter, Starr's employment was terminated.

18. Starr had no reasonable notice that his conduct would result in termination due to the conversation he had with Craig Hall. Further, Starr's service in the Oklahoma National Guard was a motivating factor in his termination.

## COUNT ONE:
## PREMATURE TERMINATION IN VIOLATION OF 38 U.S.C.A. § 4316(c)

19. Starr's deployment to Afghanistan lasted well in excess of 180 days, and his termination occurred less than one year after he returned from Afghanistan and reemployed with Quiktrip.

20. Starr complied with instructions provided by his employer with regard to calling in sick to work as it related to his PTSD, and Starr had no reasonable notice that his conduct would result in his termination.

21. Starr's employment was prematurely terminated under the provisions of 38 U.S.C.A. §4116(c), and as a result Starr suffered damages in the form of lost wages and benefits.

## COUNT TWO:
## DISCRIMINATORY TERMINATION IN VIOLATION OF 38 U.S.C.A. § 4311(a)

22. As evidenced by the actions of QuikTrip employees, Starr's military status and his military related disability were motivating factors in Starr's termination.

WHEREFORE, Plaintiff Paul Starr prays this Court enter judgment in Plaintiff's favor and award all back pay, front pay, liquidated damages, interest, attorney fees and costs, and all other reasonable damages in an amount in excess of $75,000.00.

Respectfully submitted,

**OXFORD LEHR, PLLC**

By: /s/ Benjamin Oxford
BENJAMIN OXFORD, OBA #22259
HANS OTTO LEHR, OBA #30622
9 East 4th Street, Suite 600
Tulsa, OK  74103
(918) 884-6016 Telephone
(888) 424-7080 Facsimile
ben@oxfordlehr.com
hans@oxfordlehr.com
*Attorneys for Plaintiff*