**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

PAUL STARR, an individual,                    )
                                              )
                          Plaintiff,          )
                                              )
v.                                            )        Case No. 14-CV-621-GKF-TLW
                                              )
QUIKTRIP CORPORATION,                         )
a domestic for-profit corporation,            )
                                              )
                          Defendant.          )

## OPINION AND ORDER

Before the court are the Motion for New Trial [Doc. No. 77] and Motion to Reconsider [Doc. No. 79] of plaintiff Paul Starr ("Starr"). For the reasons set forth below, the motions are denied.

### I. Background

This dispute arises from defendant QuikTrip Corporation's ("QuikTrip") termination of Starr's employment on August 31, 2012. Starr filed suit on October 17, 2014, alleging claims of premature termination in violation of 38 U.S.C. § 4316(c) and discriminatory termination in violation of 38 U.S.C. § 4311(a). Summary judgment was granted against Starr on his discrimination claim, *Starr v. QuikTrip Corp.*, No. 14-CV-621-GKF-TLW, 2015 WL 12915596 (N.D. Okla. Aug. 7, 2015), *aff'd in relevant part by* 655 Fed. App'x 642 (10th Cir. 2016); his premature termination proceeded to trial on December 5, 2016.

At trial, the parties agreed that Starr established a *prima facie* case of premature termination—that is, Starr was a reemployed service-member who discharged within a year of reemployment after a term of service lasting more than 180 days. [Doc. No. 67, p. 3]. Thus, QuikTrip bore the burden of establishing "for cause" dismissal. Specifically, QuikTrip was required to show that: (1) it was reasonable to terminate Starr based on his conduct; and (2) Starr

had notice—express or implied—that such conduct constituted grounds for termination.  *Starr v. QuikTrip*, 655 Fed. App'x 642, 644 (10th Cir. 2016) (citing 20 C.F.R. § 1002.248(a)).  The case centered on whether QuikTrip personnel manager Craig Hall ("Hall") orally modified the company's "No Call/No Show" policy to allow Starr to report absences before the start of his next shift—i.e., the next working day.  QuikTrip's written policy required absences be reported within two hours of the start of a missed shift.  Following a two day jury trial, the jury returned a verdict for QuikTrip.  [Doc. No. 75].  These motions followed.

## II. Legal Standard

By post-trial motion, a party may alternatively seek judgment as a matter of law under Fed. R. Civ. P. 50(b) and a new trial under Fed. R. Civ. P. 59(a).  *See* 9B A. Miller, Fed. Prac. & Proc. Civ. § 2539 (3d ed. 1998).  Each basis for relief, however, is distinct—"[t]he rules serve different purposes, implicate different substantive standards . . . and involve different procedures."  *See Dunlop Tire Corp. v. I.M.E. of Miami, Inc.*, 232 F.3d 900 (Table) (10th Cir. 2000) (unpublished).

Under Rule 50(b), "the court views the evidence in the light most favorable to the prevailing party."  *See Ward v. Healthsouth Corp.*, No. CIV-03-1564-F, 2007 WL 649291, at *1 (W.D. Okla. Feb. 27, 2007) (citing *Webco Industries, Inc. v. Thematool Corp.*, 278 F.3d 1120, 1123 (10th Cir. 2003)).  And judgment as a matter of law shall not be granted unless "there is *no* legally sufficient evidentiary basis" supporting the jury's verdict.  *See Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1450 (10th Cir. 1997) (internal quotations omitted).  Under Rule 59(a), by contrast, the court "is free to weigh the evidence . . . and need not view it in the light most favorable to the verdict winner."  *See DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998).  Indeed, "a new trial may be granted even if there is substantial evidence

supporting the jury's verdict." *See id.*  The question is whether "prejudicial error has occurred." Miller, Fed. Prac. & Proc. Civ. § 2531.

In this way, Rule 50(b) enunciates "a more stringent standard" for granting relief than Rule 59(a).  *See Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1216 (10th Cir. 2008).  That is unsurprising.  When considering entry of judgment as a matter of law, the court "'determine[s] whether there is any evidence to carry the case, or any issue in it, to the jury.'"  *See* Miller, Fed. Prac. & Proc. Civ. § 2531 (quoting *Reid v. Md. Cas. Co.*, 63 F.2d 10, 12 (5th Cir. 1933)).  When granting a new trial, the court considers whether a verdict—even one supported by evidence— should stand in light of "the right and justice of the case."  Miller, Fed. Prac. & Proc. Civ. § 2531 (quoting *Reid*, 63 F.2d at 12).[1]

### III. Analysis

Starr moves for judgment as a matter of law, or, alternatively a new trial on three grounds: (1) QuikTrip improperly struck prospective jurors with military service backgrounds; (2) evidence of Starr's service record was improperly excluded; and (3) QuikTrip prejudicially referenced damages in closing argument of the liability phase of trial.  For the reasons set forth below, the alternative motions are denied.

---

[1] Best read, Starr's motions seek relief under Rule 50(b) and Rule 59(a).  [Doc. No. 77, p. 1] (describing requested relief as judgment as a matter of law, or, alternatively, a new trial).  The court recognizes, however, that the motion for judgment as a matter of law is styled as a request for reconsideration.  [*Id.*].  A motion under Fed. R. Civ. P. 59(e) offers relief in extraordinary circumstances, not a second bite at the apple.  *Syntroleum Corp. v. Fletcher Int'l, Ltd.*, No. 08- CV-384-JHP-FHM, 2009 WL 761322, at *1 (N.D. Okla. Mar. 19, 2009).  Extraordinary circumstances generally include: "(1) an intervening change in controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  "In other words, when the court has 'misapprehended the facts, a party's position, or the controlling law,' a motion to reconsider is appropriate."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Whitney*, 2010 WL 2079668, at *1 (N.D. Okla. May 20, 2010) (quoting *Servants*, 204 F.3d at 1012).  For the reasons set forth in this order, in the event the motion is more properly considered as a Rule 59(e) motion, that motion is also denied.

A. Jury Selection

The Equal Protection Clause forbids the use of peremptory strikes to exclude jurors on the basis of immutable characteristics. *See Batson v. Kentucky*, 476 U.S. 79, 96–97 (1986); *J.E.B. v. Alabama*, 511 U.S. 127, 128 (1994). To that end, a litigant challenging a peremptory strike must show: (1) a prospective juror's membership in a suspect or quasi-suspect class; (2) the juror's exclusion; and (3) facts and circumstances raising an inference that class membership motivated the peremptory strike. *See United States v. Ogaz-Nevarez*, 89 F.3d 851 (Table) (10th Cir. 1996). If a *prima facie* case of discrimination is established, the burden shifts to the striking party to provide a neutral explanation for exclusion. *See id.*

Here, Starr argues that QuikTrip improperly struck jurors with prior military experience. That argument lacks merit. As a general matter, "[p]eremptory strikes may be validly exercised on the basis of employment status and occupation." *See United States v. Simon*, 422 Fed. App'x 489, 494 (6th Cir. 2011); *United States v. Ramirez-Soberanes*, 210 F.3d 391 (Table) (10th Cir. 2000) ("Federal courts have consistently upheld peremptory challenges based upon the employment of the juror."); *United States v. Adkins*, 35 F.3d 1401, 1406 (8th Cir. 1994) ("We have consistently allowed the . . . use of employment as a valid, race-neutral proxy for juror selection[.]"). And that is unsurprising—unlike race or gender, employment status is not an "immutable characteristic" triggering heightened scrutiny under the Fourteenth Amendment. *See United States v. Prince*, 647 F.3d 1257, 1262–63 (10th Cir. 2011).

Starr responds that Congress—in legislative enactments like USERRA—has recognized veterans as a protected class. The court disagrees. For one thing, Congress lacks the constitutional prerogative to define suspect or quasi-suspect classes under the Equal Protection Clause. *See United States v. Harris*, 197 F.3d 870, 875–76 (7th Cir. 1999) ("Congress does not

4

have the power to . . . declare a class of persons 'suspect' under the Fourteenth Amendment."). For another, Congress provides benefits to any number of discrete subgroups, the recognition of which for constitutional purposes could functionally eliminate peremptory challenges. Accordingly, the court concludes veteran employment status does not constitute a suspect or quasi-suspect class within the meaning of the Fourteenth Amendment, and a *Batson* challenge cannot stand.

In any case, QuikTrip did not exercise its peremptory strikes in a discriminatory manner. To start, QuikTrip did not exclude all venire members with prior military service—as Starr concedes, a veteran did, in fact, serve on the jury. [Doc. No. 77, p. 3]; [Doc. No. 78, p. 4, n.1]. Moreover, QuikTrip excluded non-veteran members of the venire as well. That corroborates QuikTrip's assertion that non-employment based rationales justified the exclusion of other jurors who were military veterans. [Doc. No. 78, p. 3]. The court also notes that Starr struck a veteran from the venire. And while "unclean hands" is not a *per se* defense to a discrimination challenge, the use of strikes "by the objecting party can be used to establish how . . . the makeup of the final jury was formed." *See United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1047 n. 47 (11th Cir. 2005); *see also United States v. Novaton*, 271 F.3d 968, 1004 (11th Cir. 2001) ("[T]he district court was free to consider all other relevant circumstances, such as the fact that . . . appellants themselves exercised peremptory challenges to strike Hispanic jurors[.]"); *United States v. Cruz-Escoto*, 476 F.3d 1081, 1090 (9th Cir. 2007). On these facts, the court concludes Starr's *Batson* challenge must fail.

<u>B. Service Record Evidence</u>

Starr also argues that the court improperly excluded evidence of his military service. Starr's "motion[s] . . . simply rehash[ ] the position taken" at pretrial conference. *See United*

*States v. Morrow*, No.98-40040-02-SAC, 1998 WL 1054230, at *7 (D. Kan. Dec. 22, 1998).  But contrary to Starr's representation, the court did not exclude records of his military service in limine; that evidentiary ruling was made at trial.  [Doc. No. 56, TR of Pretrial Conf. 17: 9–16] ("I don't believe it was raised in the motion in limine . . . The way I see it is that you're giving me a preview of some evidentiary objections  that are going to be raised at trial, so we'll think about it and be ready to rule as it comes up at trial.").

And in any event, the court's ruling did not sweep as broadly as Starr suggests.  Starr claims he "was not allowed to discuss . . . why he was having problems after his tour of combat." [Doc. No. 77, p. 4].  Not so.  In fact, the court expressly noted that "QuikTrip's knowledge of Starr's 'issues' and whether QuikTrip offered a modified attendance policy to accommodate [them] . . . [we]re plainly relevant to Starr's claim."  [Doc. No. 52, pp. 4–5] (Order Granting In Part and Denying In Part Defendant QuikTrip Corporation's Motion In Limine).  It was Starr's counsel that did not develop such testimony further.  On some level, that is unsurprising because Starr's counsel represented in pretrial briefing that Starr was never diagnosed with post-traumatic stress disorder.  [Doc. No. 51, pp. 5–6].  But in any case, in light of the parties' stipulation as to the dates of Starr's service and termination, the court cannot conclude its exclusion of military service records—specifically, commendations, awards, and letters of distinction—was "clearly erroneous," "manifests a clear error in judgment," or would have meaningfully altered the mix of facts available for the jury's deliberation.  [Doc. No. 56, TR at 15:20-16:16] (plaintiff's counsel's description of the content of military records).

## C. Closing Argument

Starr argues that QuikTrip improperly referenced damages in closing argument during the liability phase of trial.  Specifically, he suggests that reference may have influenced members of

the jury. [Doc. No. 77, p. 5–6]. That argument lacks merit. "[S]imilar to the rule 50(b) motion, a party must lay the necessary predicate to a motion for new trial during the trial. '[A] new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result.'" *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 728 F.Supp.2d 1170, 1185 (D.N.M. 2010) (quoting 11 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. Civ. § 2805 (2d ed. 1995)). Here, Starr's "failure to object alone justifies the denial of his motion[s] to the extent [they] [are] based on improper close." *See Spahr v. Ferber Resorts, LLC*, 686 F.Supp.2d 1214, 1223 (D. Utah 2010); *see also United States v. Hill*, 60 F.3d 672, 675 (10th Cir. 1995) (objecting in a motion for new trial "does not make up for the failure to object when the evidence was proffered at trial"). Such a rule discourages a "wait and see" approach to objections, whereby a party sits silent until a verdict is returned before lodging a complaint. *See id.*; *see also United States v. Thomas*, 627 F.3d 146, 158 (5th Cir. 2010) ("A defendant who fails to object immediately to part of a counsel's argument and instead waits until the argument has concluded fails to preserve the issue.").

In any case, Starr does not articulate precisely how the jury was prejudiced by QuikTrip's fleeting comments. And "the [c]ourt is not convinced that this brief comment constitutes such plain error affecting substantial rights and the fairness or integrity of judicial proceedings." *See Ryan Dev. Co., L.C. v. Ind. Lumbermens Mut. Ins. Co.*, No. 09-1264-EFM, 2011 WL 5080309, at *2 (D. Kan. Oct. 25, 2011).

WHEREFORE, Starr's Motion for New Trial [Doc. No. 77] and Motion to Reconsider [Doc. No. 79] are denied.

IT IS SO ORDERED this 1st day of February, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT